```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
                       ATLANTA DIVISION

UNITED STATES OF AMERICA        :
                                :   CRIMINAL ACTION
     v.                         :
                                :   NO.  1:11-CR-218
VINCENT LAMAR HALL              :
```

**MOTION FOR REVOCATION OF PRETRIAL RELEASE ORDER FOR DEFENDANT**

The United States of America, by and through its counsel, Sally Quillian Yates, United States Attorney for the Northern District of Georgia, and Cassandra J. Schansman, Assistant United States Attorney, files this Motion for Revocation of defendant Vincent Lamar Hall's Release Order.

### Introduction

On May 3, 2011, a federal grand jury returned a 20-count indictment charging the defendant and others with conspiring to distribute cocaine and marijuana, money laundering, and tax evasion. See United States v. Hall, 1:11-CR-218. Based on those charges, defendant faces a maximum term of imprisonment of life and a mandatory minimum term of imprisonment of ten (10) years.

On May 12, 2011, the Honorable Judge Gerrilyn G. Brill conducted a detention hearing. The United States moved to detain defendant because he represents a danger to the community and a flight risk. See U.S.C. § 3142. Ultimately, Judge Brill heard argument and ordered defendant released on an unsecured bond with certain conditions. By this motion, the United States moves for revocation of defendant's Pre-trial Release Order.

**Argument**

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(e). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. See United States v. King, 849 F.2d 485, 488 (11th Cir. 1988). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. Id; United States v. Quartermaine, 913 F.2d 910, 917 (11th Cir. 1990); King, 849 F.2d at 489; United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985).

Among the factors the Court shall consider during the detention hearing or upon review are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by defendant's release. See 18 U.S.C. § 3142(g); United States v. Hurtado, 779 F.2d 1467, 1470

n.3 (11th Cir. 1985). When reviewing a detention order, a district court must conduct a <u>de novo</u> examination and exercise "independent consideration" of all facts properly before it. <u>United States v. King</u>, 849 F.2d 485, 490 (11th Cir. 1988).

Furthermore, because this is a case involving narcotics offenses, the Bail Act has established a rebuttable presumption that a defendant is both a flight risk and a danger to the community. <u>See</u> 18 U.S.C. § 3142(e). That presumption exists in cases where there is probable cause to believe that a defendant committed a narcotics offense for which a maximum term of imprisonment of ten years or more is authorized. <u>Id.</u> Of course, a grand jury indictment establishes probable cause under 18 U.S.C. § 3142(e) and thus triggers the presumption of detention. <u>King</u>, 849 F.2d at 487-88.

Congress intended that the statutory presumption would have a practical effect. <u>United States v. Jessup</u>, 757 F.2d 378, 382 (1st Cir. 1985). In that regard, once the presumption is triggered, the defendant has the burden to produce some credible evidence to rebut the presumption. <u>King</u>, 849 F.2d at 488. Moreover, the presumption does not disappear when a defendant meets his burden of producing rebuttal evidence. <u>Id.</u>; <u>United States v. Dominguez</u>, 783 F.2d 702, 707 (7th Cir. 1986). Indeed, even if a defendant offers evidence to rebut the presumption, the presumption remains as an evidentiary finding militating against release, to be weighed along with other

evidence relevant to the factors listed in Section 3142(g). Dominguez, 783 F.2d at 707; King, 849 F.2d at 488. In the end, the Bail Act's presumption is a significant factor that supports pretrial detention under both rationales for detention. See United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988) (presumption a factor militating against release); United States v. Cook, 880 F.2d 1158, 1160 (10th Cir. 1989)(same). Lastly, when reviewing a detention order, a district court must conduct a de novo examination and exercise "independent consideration" of all facts properly before it. King, 849 F.2d at 490. Judged under these principles, defendant's Pre-trial Release Order should be revoked as the facts of the case establish that the defendant is both a continued danger to the community and a flight risk.

As a preliminary matter, the charges set forth in the indictment trigger the rebuttable presumption that Hall is both a flight risk and a danger to the community. (Doc. 1); 18 U.S.C. § 3142(e); King, 849 F.2d at 487-88 ("to trigger section 3142(e)'s rebuttable presumption, the government need not make a showing of probable cause independent of the grand jury's indictment"). As a result, the starting point in the Court's bond analysis should be detention. And, even if Hall does rebut the presumption (which the United States submits he cannot), the theory underpinning the presumption can still be considered by the Court. United States v. Hare, 873 F.2d 796, 798-99 (5th Cir. 1989). In addition to the

presumption, the facts of this case further support the conclusion that Hall represents a danger to the community and a flight risk.

The weight of the evidence against defendant justifies detention -- as the United States has substantial proof of guilt. See U.S.C. § 3142(g)(2).  By way of background, in the Fall of 2009, agents interviewed a cooperating defendant (CS), who informed them s/he had transacted drug trafficking business with Hall over the last year, beginning with the delivery of 700 pounds of marijuana to Hall's residence and ending with the foiled delivery of 16 kilograms of cocaine from the 50 kilograms seized at the time of the CS's arrest.  The CS was able to direct agents to Hall's residence, where Hall still lives today.  In addition, the CS told agents how Hall handed over payment of approximately $500,000 for the marijuana in $100 dollar bills, which he retrieved from inside his residence.

Most recently, as proffered by the United States at the detention hearing, Hall was intercepted numerous times via a court-authorized wire tap, over the course of several months, organizing and coordinating drug transactions. By way of example, on October 25, 2010, Hall was the supplier for a four kilogram transaction, involving his co-defendants Jones and Gasque. United States v. Fernandez Velez, 608 F. Supp.2d 93, 93 (D. D.C. 2009) (detention warranted where inter alia defendant was charged in a drug conspiracy and where the weight of the evidence, which included

phone conversations, was strong). This cocaine was eventually recovered by agents when Gasque discarded it while being followed by officers. Subsequent to this, Jones, Jenkins, and Gasque orchestrated an attempted armed robbery of yet another drug dealer in an effort to repay Hall for the four kilograms of cocaine.

Hall's danger to the community is also evidenced by his participation (as a supplier) in a drug trafficking conspiracy. United States v. Hromada, 49 F.3d 685, 689 (11th Cir. 1995) ("violence go[es] hand-in-hand with illegal drug operations"); see United States v. Pina-Aboite, 97 F. App'x 832 (10th Cir. 2004) ("the danger-to-the community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community") (internal citations omitted). Throughout the last several months agents have amassed intercepted conversations, surveillance, and other evidence demonstrating Hall's role as a source of supply for cocaine and marijuana. Moreover, on May 3, 2011, Hall was arrested as part of a traffic stop as he left his residence. On his person, agents found a Beretta 3032 Tomcat .32 caliber semi-auto handgun. More significantly, after a search of Hall's residence, which included several secret rooms, agents discovered eight additional weapons, to include:

1. One Taurus .45 /.410 caliber revolver named "The Judge" (The .45 is a pistol round and the .410 is a shot gun round; this revolver can fire both);

2. One Mossberg 500A 12 gauge pistol grip shotgun;

3. One Taurus PT 24/7 Pro .40 caliber semi-auto handgun;

4. One Masterpiece Arms M11 9mm semi-auto machine pistol with barrel extension;

5. One Taurus PT940 .40 caliber semi-auto handgun;

6. "Zip Gun" .22 caliber single shot (home made/machine shop gun);

7. One FN Herstall Five-Seven 5.7x28 mm semi-auto handgun (Holds 20 rounds of armor piercing rounds in magazine. Found with armor piercing rounds in gun ready to go.); and

8. One Smith & Wesson 163 .357 Magnum 8 shot revolver.

All of these weapons were loaded, with a round in the chamber and ready to fire. Indeed, it appeared that these weapons had been strategically placed around his residence in an effort to have a weapon accessible at all times. See United States v. Terzado-Madruga, 897 F.2d 1099, 1120 (11th Cir. 1990) (weapons are "tools of the [drug] trade"). This evidence alone is sufficient to warrant detention.

In addition, to the significant number of weapons found, the nature of the charges and defendant's characteristics warrant pre-trial detention. See 18 U.S.C. §§ 3142(g)(1) and (3). The charges against defendant are serious violations of the law. Hall has been indicted for his drug trafficking activities, which date back to 2006, as well as for money laundering and tax evasion. He faces a significant prison sentence if convicted as charged. See 21 U.S.C. § 841(a) (mandatory minimum of ten years, maximum sentence of life). When considered in conjunction with the strength of the Government's case, these conditions provide defendant with a strong incentive to flee.

The Government also believes Hall has funds available, in the form of significant drug proceeds, sufficient to allow him to flee, should he choose to do so. His residence alone is worth far in excess of his purported income, which in his most successful year he reported as approximately $83,000. Notably, his residence was purchased in 2004 as a 2,300 square foot residence, valued at $279,000. However, since the purchase, Hall has had numerous renovations completed, adding approximately 3,000 square feet, a pool and a "pool house," as well as several secret rooms inside the residence and pool house. As a result, no conditions or combination of conditions exists that would assure the safety of the community or defendant's appearance.

## **Conclusion**

For these reasons, the United States respectfully requests that this Court revoke defendant's Pre-trial Release Order and detain defendant.

Respectfully submitted, this 12th day of May, 2011.

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


*/s/ Cassandra J. Schansman*
Cassandra J. Schansman
Assistant United States Attorney
75 Spring Street, SW, Suite 600
Atlanta, GA 30303
404.581.6083 direct
404.581.6181 fax
Georgia Bar Number 183184

```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
                         ATLANTA DIVISION

UNITED STATES OF AMERICA        :
                                :       CRIMINAL ACTION
     v.                         :
                                :       NO.  1:11-CR-218
VINCENT LAMAR HALL              :
```

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1C**

This is to certify that the foregoing document was formatted in accordance with Local Rule 5.1B in Courier New font, 12 point type.

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served upon the persons listed below a copy of the foregoing document via the Electronic Case Filing system of the United States District Court for the Northern District of Georgia, which will automatically send an e-mail notification of such filing, as well as sent a copy, via facsimile and email, to the following attorney of record,

    Antonio L. Thomas
    Antonio L. Thomas, Associated
    230 Peachtree St NW
    Atlanta, GA 30303
    404/577-2131
    404/577-2998
    thom380@bellsouth.net

This 12th day of May, 2011.

                                      */s/ Cassandra J. Schansman*
                                      CASSANDRA J. SCHANSMAN
                                      Assistant United States Attorney