UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | INDICTMENT NO. |
| v. | ) | |
| | ) | 1:11-CR-00218-TWT-CCH |
| GLENN A. COOK, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT COOK'S MOTION TO SUPPRESS WIRETAP INTERCEPTS

The government has charged Glenn Cook, and five other individuals, in a twenty-count indictment that alleges Mr. Cook was involved with narcotics (Counts 1, 3 and 8) and money laundering violations (Count 10). The government sought and obtained four separate wiretap applications on July 13, October 4, and November 8 of 2010, and January 31 of 2011 relating to Mr. Cook. This investigation was triggered by various debriefings of confidential informants beginning in 2007 and conversations intercepted involving co-defendants in the instant case; primarily T'Michael Jones who was the target of this investigation.

As set forth in this motion, the facts alleged in the government's Title III application do not support a claim of necessity for electronic surveillance, as required by 18 U.S.C. §§ 2518(1)(c) and 3(c). Consequently, Mr. Cook moves to

1

suppress the fruits of all electronic intercepts authorized by the orders granting the government's applications of July 13, 2010 and October 4, 2010.

Mr. Cook also moves to suppress the fruits of all intercepts authorized by all subsequent and supplemental Title III orders, including the orders from November 8, 2010 and January 31, 2011. Each of these applications rested largely upon the claims put forth in the government's October 4, 2010 application. Accordingly, Mr. Cook argues two independent bases for suppression of the fruits of the supplemental intercepts. First, none of the supplemental applications meets the necessity requirement set forth in 18 U.S.C. § 2513(1)(c) and (3)(c). Second, because each subsequent application relies upon preceding applications, the taint associated with the initial, invalid order, requires suppression of the evidence acquired from each subsequent application.

## THE INVESTIGATION AND INDICTMENT

Mr. Cook is charged in four of the twenty counts in the indictment. Counts One, Three and Eight, charge Mr. Cook with various narcotics violations and Count Ten alleges a money laundering conspiracy.

The sequence of events that eventually led to Mr. Cook began when DEA agents' investigation, beginning in 2007, led to co-defendant T'Michael Jones as a probable drug trafficker. The government learned that Mr. Jones was in contact

with several suspected suppliers who were believed to be working independently of one another.  Between June and July, agents noted 35 calls from Mr. Jones to a number registered to Mr. Cook which formed the basis for the wiretap application filed in the Middle District of Georgia on July 13, 2010.  In October of 2010, agents intercepted several calls between Mr. Jones and Mr. Cook based on the authorization of October 4, 2010, in the Northern District of Georgia, wiretap which largely formed the basis for the two subsequent wiretap applications in November 2010 and January 2011.

## ARGUMENT

### I. THE INITIAL TITLE III APPLICATION FAILED TO MEET THE STATUTORY REQUIREMENT OF NECESSITY; ACCORDINGLY, THE COURT MUST SUPRESS ALL FRUITS OF THE ELECTRONIC SURVEILLANCE.

An individual has standing to challenge both wiretap intercepts of phones to which he subscribes and wiretap intercepts of his or her voice, when it is captured on any telephone, regardless of who owns the telephone(s).  18 U.S.C. § 2510(11); *Alderman v. United States*, 394 U.S.165, 175 n.9 (1969).  Mr. Cook clearly has standing to challenge these electronic intercepts.

Title 18 U.S.C. § 2518 prohibits court-ordered electronic surveillance unless the government demonstrates the necessity of using such invasive techniques.  Thus, while the government may utilize electronic surveillance when necessary to

3

ferret out serious crime, it must be accomplished only when assurances have been made that citizens are not subjected to unreasonable and unnecessary intrusions into their privacy. *United States v. Giordano*, 416 U.S. 505—527 (1974). Electronic interception of private conversation may be conducted only after court authorization based upon government compliance with stringent predicate requirements. *Id.*

The standard reflected in 18 U.S.C. § 2518(3)(c) provides that the issuing judge shall determine whether "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." The statutory standard prescribed in 18 U.S.C. §§ 2518(1)(c) and 2518(3)(c) is to be strictly applied. The purpose of the necessity requirement is to insure that "wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 (1974).

Central to this restraint is the government's burden to meet the "exhaustion" or "necessity" requirement of 18 U.S.C. § 2518(1)(c), which requires that each application for electronic surveillance include a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they *reasonably* appear to be unlikely to succeed if tried or to be too dangerous. *United States v. Carrazana*, 921 F.2d 1557 (11th Cir. 1991). Where the

4

government has failed to establish "necessity" for issuance of the wiretap orders, as required under 18 U.S.C.§§ 2518(1)(c) and (3)(c), suppression of the wiretap evidence is warranted on this basis alone. 18 U.S.C. § 2515; *United States v. Giordano*, 416 U.S. 505, 527 (1974).

### A. Title III Requires That Any Order Authorizing Electronic Intercepts Be Supported by a Showing of Specific Necessity.

The government is not permitted merely to characterize a case as a "drug conspiracy" and thus inherently difficult to investigate. The wiretap affidavit must show with specificity why in this particular investigation ordinary means of investigation will fail. *Giordano*, 416 U.S. at 505; *see also*, *United States v. Weber*, 808 F.2d 1422 (11th Cir. 1987); *United States v. Van Horn*, 789 F.2d 1492 (11th Cir. 1986); *United States v. Robinson*, 698 F.2d 448, 453 (D.C.Cir. 1983) (per curiam) (superseded by statute on other grounds) ("[W]e must be careful not to permit the government merely to characterize a case as a 'drug conspiracy' . . . that is therefore inherently difficult to investigate. The affidavit must show with specificity why in this particular investigation ordinary means of investigation will fail").

While a wiretap application "need not . . . show a comprehensive exhaustion of all possible techniques," the government's affidavit must "explain the retroactive or prospective failure of several investigative techniques that

reasonably suggest themselves." *Van Horn*, 789 F.2d at 1496; *United States v. Alonzo*, 740 F.2d 862, 868 (11th Cir. 1984), cert. denied, 569 U.S. 1166 (1985).

**B.     The Government Failed To Make the Requisite Showing of Necessity.**

### 1.     *July 13, 2010 Wiretap Application in the Middle District of Georgia*

The July wiretap application sought authorization to intercept the wire communications of 10 individuals, including Mr. Cook, on two telephones belonging to Mr. Jones. It is unclear whether this investigation actually yielded any interception between Mr. Jones and Mr. Cook.

### 2.     *October 4, 2010 Wiretap Application in the Northern District of Georgia*

The October 4, 2010 wiretap application sought authorization to intercept the wire communications of 11 individuals on two telephones belonging to Mr. Jones. These interceptions yielded four conversations between Mr. Jones and Mr. Cook that later served as the basis for subsequent wiretap authorizations and the later search of Mr. Cook's residence.

DEA Agent Richard Otwell was the affiant for the affidavit supporting the wiretap application. This initial Title III application is replete with accounts of specific investigative successes into the drug trafficking activities of Mr. Jones by the Columbus DEA. The latter part of the affidavit, however, is basic boilerplate language claiming the limits of traditional methods in support of the necessity for the wiretap warrant. Agent Otwell notes that, while the focus of the Columbus

6

DEA was on Mr. Jones and his subordinates, the Atlanta DEA's focus was on co-defendant Vincent Hall and his supply chain. However, the remainder of the affidavit speaks minimally about Mr. Hall and appears to directly focus back on Mr. Jones, indicating that Agent Otwell was unsure of what information was sought and the goals of his investigation. Clearly, the government, having more than enough information from what appears to be a successful investigation of Mr. Jones, sought to abandon its investigation to pursue an easier and more invasive intrusion using electronic surveillance.

### a. *Confidential Informants*

Since 2008, the government has been working with two confidential informants, who, Agent Otwell notes, have both provided reliable and credible information. Both confidential informants have gained information on Mr. Jones and his suppliers. In the second part of his affidavit, Agent Otwell relies on speculation to support his claim of necessity. Agent Otwell claims, using boilerplate language, that further use of these confidential informants will be unsuccessful and use of other investigative tools will be futile.

Agent Otwell dismisses outright the possibility of using several traditional investigative techniques. He also makes the claim that either of these confidential informants or other potential witnesses is of no further use to the investigation because the suspects would be aware of their arrest and would then refuse to work

with them. This claim is largely unsupported. Agent Otwell does not allege that either confidential informant was ever unsuccessful in his efforts to advance himself within the drug conspiracy; nor, that any conspirator(s) rebuffed any such effort.

### b. *Other Investigative Techniques*

To further his claim of necessity, Agent Otwell explains that he has used, and is experienced with, a wide range of investigative techniques, including:

- Physical surveillance;
- Use of grand jury subpoenas;
- Interview of subjects or associates;
- Search warrants;
- Infiltration by undercover officers;
- Use of cooperating individuals;
- Review of telephone records, including pen register and trap and trace results; and
- Interception of wire communications.

Notwithstanding the apparently successful investigation described in the first part of his affidavit, Agent Otwell's claims that each of these investigative procedures

(1) have been tried and failed; or

(2) reasonably appear unlikely to succeed.

This type of conclusory guesswork is far from the specificity required by Title III. To support his claims, Agent Otwell uses boilerplate language to support his speculation.

Agent Otwell represents to the Court that a wiretap intercept of Target Telephones 1 and 2 are the only investigative technique for learning (1) drug storage locations; (2) drug shipment methods; (3) the identities of Mr. Jones's suppliers and associates; (4) the identities of other traffickers who use the Metro Atlanta area as a base of operation. However, his request is based upon an affidavit that is internally inconsistent; the first half describes a successful investigation while the second half portrays a stalled investigation, stymied by a profound lack of available investigative tools. Because the government failed to demonstrate the requisite necessity, the intercepts gathered as a consequence of this warrant must be suppressed.

Analysis of applicable case law demonstrates that the Court erred in granting Agent Otwell's initial application for wiretap intercepts. In *United States v. Carrazana*, 921 F2d. 1557 (11th Cir. 1991) the Eleventh Circuit considered the question of necessity. In *Carrazana* the defendants challenged the validity of Title III warrants by arguing that the government's applications failed to demonstrate necessity. Careful analysis of the Eleventh Circuit's decision to uphold the district court's order, illustrates why this case demands a different result. In *Carrazana*,

the government's affidavit recounted specific surveillance failures. For example, on "some forty-nine occasions attempts to determine what cars had entered the Plasencia compound were unsuccessful." *Id.* at 1565. In contrast, Agent Otwell's affidavit does not recount one failed surveillance attempt.

In *United States v. Gonzalez, Inc*., 412 F 3d 1102 (9th Cir. 2005) the Ninth Circuit analyzes a wiretap affidavit and the result directs the conclusion that the agent did not demonstrate necessity for wiretap intercepts. In *Gonzalez* the government was investigating allegations of alien smuggling. After extensive investigations into the Arizona operations of the Gonzalez organization, federal agents turned their attention to the California aspect of the organization focusing on what is termed the Blake Avenue office.

The government applied for a wiretap warrant. According to the Ninth Circuit, the government had attempted the following investigative techniques: (1) five days worth of pen register analysis; (2) an equally short use of trap and trace analysis; and (3) limited physical surveillance of the Blake Avenue Office. *Id.* at 1112. Additionally, the investigating agent Hill stated that an attempt was made to infiltrate the Blake Avenue location.

For the Ninth Circuit, the use of the above listed techniques did not make a case for necessity. The court stated: "In our judgment, the facts attested to in the Hill affidavit indicated that the government side-stepped its responsibility to use

promising traditional techniques when it began to investigate the Blake Avenue office, and instead conducted only the most cursory investigation before seeking a wiretap. We hold that the necessity provisions require the government to do more." *Id.* 1114.

The *Gonzalez* decision also points to other deficiencies in Agent Otwell's affidavit. In *Gonzalez*, Agent Hill stated that many investigative tools would not be useful, including surveillance. As to Hill's rejection of surveillance as an investigative technique, the court stated that observations of the comings and goings of various individuals would be of evidentiary value. *Id.* The court also questioned why Hill had not used confidential informants or undercover agents to investigate the Blake Street location. *Id.*

Similar to the instant case, when the agent rejected the use of grand jury subpoenas as an investigative tool, the *Gonzalez* court stated that such assertions are "boilerplate conclusions that merely describe inherent limitations of normal procedures which we have found insufficient to establish necessity." *Id.* Agent Otwell has employed just this type of boilerplate in his effort to establish necessity.

## II. CONCLUSION

For the forgoing reasons, Mr. Cook requests that the wiretap interceptions be suppressed as well as any evidence later obtained as a result of that search.

RESPECTFULLY SUBMITTED,

GARLAND, SAMUEL & LOEB, P.C.

_____
DONALD F. SAMUEL
STATE BAR NO. 624475
ATTORNEY FOR DEFENDANT

*/s/ Kristen Wright Novay*
KRISTEN WRIGHT NOVAY
STATE BAR NO. 742762
ATTORNEY FOR DEFENDANT

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225
Fax: (404) 365-5041
dfs@gsllaw.com
kwn@gsllaw.com

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **Plaintiff,** ) | **INDICTMENT NO.** |
| **v.** ) | |
| ) | **1:11-CR-00218-TWT-CCH** |
| **GLENN A. COOK,** ) | |
| ) | |
| **Defendant.** ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have on this the 21st day of July, 2011, served counsel for the opposing party with a copy of the within and foregoing *Defendant Cook's Motion to Suppress Wiretap Intercepts* by electronic filing.

                                              GARLAND, SAMUEL & LOEB, P.C.

                                              DONALD F. SAMUEL
                                              STATE BAR NO. 624475